**Opinion filed November 13, 2008**



In The

# Eleventh Court of Appeals

_____

## No. 11-07-00119-CR

_____

**THOMAS DALE LYNCH, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

**On Appeal from the 9th District Court**

**Montgomery County, Texas**

**Trial Court Cause No. 06-09-09152-CR**

**M E M O R A N D U M   O P I N I O N**

Thomas Dale Lynch was arrested after bumping several other vehicles on U.S. Highway 59 with his Chevrolet Blazer. Lynch was indicted for possession of a controlled substance and for three counts of aggravated assault with a deadly weapon. The State abandoned the possession allegation at the start of trial, the trial court granted Lynch's motion for directed verdict as to one of the aggravated assault counts, and the jury found Lynch guilty of one aggravated assault count but acquitted him of the other. The jury then assessed his punishment at confinement for seven years and six months. We affirm.

I. *Background Facts*

On August 5, 2006, the Texas DPS was notified that a white SUV was ramming other cars on Highway 59. DPS Trooper Derek Leitner was dispatched, and he observed a Chevrolet Blazer traveling south on Highway 59 at a high rate of speed. Trooper Leitner pursued the Blazer for two miles, driving as fast as 120 miles per hour, before it was finally stopped with the assistance of other law enforcement officials. Trooper Leitner noticed Lynch and a female passenger making furtive movements toward the Blazer's center console area. During a subsequent search of the vehicle, police found several generic Vicodin tablets.

Lynch was removed from the Blazer. He appeared intoxicated and began acting aggressively. While Lynch was being taken into custody, other vehicles stopped at the scene and told the officers that Lynch had hit them. Lynch was placed in a police car with a cage. When Lynch learned that he was under arrest, he began yelling, screaming, spitting, and cussing. He kicked the window out of the car and tried to escape. He was eventually restrained by the officers with pepper spray.

II. *Issues*

Lynch challenges his conviction with three issues. Lynch contends that the evidence is legally and factually insufficient to support his conviction and that the trial court erred by including incorrect definitions of "intentionally" and "knowingly" in the jury charge.

III. *Discussion*

A. *Sufficiency of the Evidence.*

Lynch contends that the evidence is legally and factually insufficient because there was no evidence that he intentionally or knowingly threatened the victim with imminent bodily injury.

1. *Standard of Review.*

To determine if the evidence is legally sufficient, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jackson v. State*, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000). The factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). The factfinder may choose to believe or disbelieve all or any part of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App.

2

1986).  To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Id*. at 414-15.

> *2. Analysis.*

The jury convicted Lynch of committing an aggravated assault against William Underwood. The State was required to prove that Lynch intentionally or knowingly threatened Underwood with imminent bodily injury by using or exhibiting a deadly weapon. TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2) (Vernon Supp. 2008). Lynch does not dispute that he bumped Underwood's car with his vehicle.  He contends, however, that this is insufficient to constitute aggravated assault because the evidence established only that he acted recklessly.

Underwood testified that he and his wife were driving home from vacation.  They were on Highway 59 traveling the speed limit when he was bumped from behind.  Underwood looked in his rearview mirror and saw a car "underneath [his] rear bumper" pushing him.  The driver was cursing, shaking his fists, and making an obscene gesture.  Underwood was unable to move out of the way because he had an eighteen-wheeler on one side and a barrier on the other.  Finally, after being hit numerous times and being pushed for three-fourths to one mile, Underwood was able to partially pull his vehicle over onto the shoulder.  Lynch drove through the narrow gap between Underwood's vehicle and the eighteen-wheeler, all the while yelling and shaking his fist at Underwood.

Jason Gregory Palmer described a similar situation.  He and his wife were on Highway 59 driving the speed limit when Lynch hit him from behind.  Palmer was unable to get out of Lynch's way because he had an eighteen-wheeler on one side and another in front.  After driving like this for a mile or two, Lynch went around Palmer – driving on the shoulder and median.  Palmer described Lynch as looking aggravated and in a big rush.  Lynch accelerated away, weaving through the traffic. Palmer saw other vehicles moving over to the shoulder to avoid Lynch as Lynch drove through.

Underwood and Palmer testified that Lynch's actions caused them fear and concern, and both testified that they believed Lynch acted intentionally.  Palmer said that he was afraid Lynch would push him into the eighteen-wheeler beside him or into the median.  Underwood told the jury that he was afraid Lynch would cause him to lose control of his vehicle.  Both also testified that they believed Lynch knew exactly what he was doing.

3

A rational juror could conclude that Lynch's actions were intentional because, when Underwood and Palmer did not immediately move out of his way, he began bumping them until they did so. The fact that he took the same action on two separate occasions, coupled with testimony that he maintained control of his vehicle while maneuvering through the crowded traffic at a high rate of speed, supports the conclusion that Lynch intentionally threatened Underwood in order to force him to move his vehicle. Issue One is overruled.

Lynch argues that, when all of the evidence is considered in a neutral light, it is factually insufficient because it shows that he was not in his right mind but was intoxicated. Lynch points to Underwood's testimony that he appeared to be out of his mind, to Trooper Leitner's testimony that he appeared intoxicated, and to Deputy Constable Richard J. Ford's testimony that Lynch was not acting normally and appeared to have lost the normal use of his faculties.

Voluntary intoxication is not a defense to the commission of a crime. TEX. PENAL CODE ANN. § 8.04(a) (Vernon 2003). Nor does it negate the elements of intent or knowledge. *Baker v. State*, 625 S.W.2d 840, 843 (Tex. App.—Amarillo 1981, no writ). Thus, the fact that Lynch may have been under the influence of drugs or alcohol does not make the evidence factually insufficient. Issue Two is overruled.

### B. Charge Error.

Lynch next complains that the trial court improperly utilized result-oriented definitions of "intentionally" and "knowingly" in the charge rather than nature-of-the-conduct-offense definitions. The State does not dispute that the wrong definitions were used but responds that Lynch was not harmed. Lynch responds that he was harmed because the jury was prohibited from considering whether he was aware of the circumstances surrounding his conduct.

#### 1. Standard of Review.

Lynch did not object to the jury charge's definitions at trial. Consequently, he must show not only that the trial court erred and that he suffered actual harm but also that he suffered egregious harm. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Egregious harm arises if the error is so severe that it deprived the defendant of a fair and impartial trial. *Id.* When making this decision, we consider (1) the entire jury charge, (2) the state of the evidence, (3) the arguments of counsel, and (4) any other relevant information in the records as a whole. *Richardson v. State*, 879 S.W.2d 874, 879 (Tex. Crim. App. 1993).

4

*2. Analysis.*

We note initially that Lynch's argument is counter to Section 8.04(a). The circumstance to which he alludes is his intoxication. Because voluntary intoxication is not a defense and cannot be used to negate the elements of intent or knowledge, the court's error cannot be considered egregiously harmful on that basis alone. Furthermore, we note that the definitions in the charge did not prevent Lynch from developing evidence of his intoxication or from arguing its impact on his mental state – in fact his closing argument focused on little else.

The jury was well aware that Lynch was intoxicated. Several witnesses described his appearance and demeanor and all agreed that he was not acting normally. Trooper Leitner testified that he found generic Vicodin pills and empty beer cans in the Blazer, and he confirmed that in his arrest report he wrote, "Mr. Lynch was in an altered state of mind when operating his motor vehicle."

During closing argument, Lynch's counsel emphasized the testimony that Lynch was not acting normally, was confused, and did not appear to know what he was doing. He reminded the jury that police found pills in Lynch's vehicle. He then argued:

> We are not saying he is not guilty of anything because he was intoxicated. We're saying that he doesn't rise to the level of a second-degree felony of aggravated assault because you have the "intentionally and knowingly" clause.

Lynch's counsel continued and repeatedly told the jury that Lynch's behavior was inconsistent with an intent to hurt someone because of his mental state. The State did not object to any portion of counsel's closing argument or to any evidence of Lynch's intoxication.

Because Lynch's intoxication was fully developed during trial and his counsel was allowed to extensively argue its impact on his state of mind, he has not shown egregious harm. Issue Three is overruled.

IV. *Holding*

The judgment of the trial court is affirmed .

RICK STRANGE

JUSTICE

November 13, 2008

Do not publish. *See* Tex. R. App. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

5